WILLIAM HUGHES v. THE PROVIDENCE AND WORCESTER RAILROAD COMPANY.

A highway may be acquired under the laws of this State, as at common law, by dedication, and dedication may be proved by the use of land as a highway, with the silence or acquiescence of the owner, so long continued that the public accommodation and private rights would be materially affected by the interruption of the enjoyment, as well as by the acts and declarations of the owner, tending to show an intent to dedicate the land for a public highway.

Hughes *v.* The Providence and Worcester Railroad Company.

For obstructions to a highway the public may proceed against the person causing the same by indictment, as for a public nuisance, and a private individual, who has suffered special damages from the obstruction, has his remedy by private action.

Where the charter of a railroad corporation prescribed, that, if the railroad should in the course thereof pass any highway, it should be so constructed as not to impede or obstruct the safe and convenient use of such highway, and gave the corporation power to raise or lower such highway, so that the road, if necessary, might pass under or over or across the same ; and, in case they did so raise or lower any highway, gave to the town council of the town, where the highway was located, power to require of the corporation to do it in such a manner as should be satisfactory to them, by requesting any alteration or amendment which should be necessary for that purpose, and by a complaint to the Court of Common Pleas in case of a refusal or neglect to comply with such request : *held,* that the corporation were not justified in widening a highway or diverting its course, or supplying its place with a new way, so that the railroad would be passed at a point different from its intersection with the original way, even though the change was approved or acquiesced in by the Town Council and was for the convenience of the public, and that, in such case, they were liable in damages to private individuals who had suffered a special injury by their act.

Where one party to a suit employs a surveyor to make a plat, to be used as evidence in the suit, he is not entitled to recover, as a part of his costs, the expense of making such plat.

This was an action on the case, containing two counts, the first alleging that the plaintiff was the owner and occupant of a lot of land, with the dwelling-houses thereon, situated on Back Street, in Providence ; that the said Back Street was his private way, and that the defendants had obstructed the safe and convenient use thereof, and destroyed the same, by crossing it with their railroad, and claiming damages under the 11th section of the Company's charter for the injury sustained ; and the second, alleging that the said Back Street was a public highway, and claiming damages for special injury to the plaintiff, by reason of the obstruction aforesaid. The case was tried to the jury at the present term of this Court, and a

verdict found for the plaintiff for thirty-six dollars per year damages, and the defendants claimed a second trial as of right under the statute. The parties, however, agreed to waive the jury trial, and submit the case to the Court upon the evidence, and if the Court should be of opinion that the plaintiff was entitled to judgment, that judgment should be entered for the damages found by the verdict.

The evidence in regard to the question whether Back Street was a public or private way is fully stated in the opinion, as also the evidence in regard to the nature of the obstruction.

The defendants justified their act under the 11th section of their charter, which is as follows: "If the said Railroad in the course thereof, shall cross any private way, the said corporation shall so construct said railroad, as not to obstruct the safe and convenient use of said private way; and if said railroad shall not be so constructed, the party aggrieved shall be entitled to his action on the case in any court proper to try the same; and shall recover his reasonable damages for such injury. And if said railroad shall in the course thereof cross any canal, turnpike or highway, the said railroad shall be so constructed as not to impede or obstruct the safe and convenient use of such canal, turnpike, or other highway. And the said corporation shall have power to raise or lower such turnpike or highway, so that said railroad, if necessary, may conveniently pass under or over or across the same. And if the said corporation shall raise or lower any turnpike or highway pursuant hereto, and shall not so raise or lower the same, as to be satisfactory to the proprietors of such turnpike, or to the town council of the town in which said highway may be situated, as the case

may be, said proprietors or town council may require in writing of said corporation, such alteration or amendment, as they shall deem necessary. And if the said corporation shall refuse or unreasonably neglect to make the same, such proprietors or town council, as the case may be, may file their complaint with the Court of Common Pleas for the county in which said turnpike or highway may be; and, if said Court shall adjudge that said alteration is reasonable and proper, they shall decree that the same be made by the said corporation, and render judgment accordingly. And in case said corporation shall neglect to comply with said judgment within the time prescribed by said Court, the said proprietors or town council, as the case may be, may proceed to make such alteration or amendment; and may institute and prosecute to final judgment and execution, in any Court proper to try the same, any action of the case against said corporation; and shall therein recover a reasonable indemnity in damages for all charges, disbursements, labor and services, occasioned by making such alterations and amendments, with costs of suit."

It appeared that the plaintiff's houses and land were situated on the west side of Back Street, and that the land on the east side, between Back Street and Charles Street, was owned by the City of Providence. The railroad intersected Back Street diagonally, from south-east to north-west, cutting through the south-east corner of the city land and Back Street, directly in front of the plaintiff's houses, and striking the west line of Back Street, several feet to the north of the plaintiff's land. In the adjustment of damages between the Railroad Corporation and the City, the City conveyed to the Corporation that part of the City land through which the road

passed, and also agreed to appropriate a portion of their land between Back Street and Charles Street, on the north-east side of the railroad, to the purposes of a public street, thus connecting Back Street with Charles Street, and in pursuance of this agreement, a resolution of the Board of Aldermen (stated in full in the opinion) was passed on the 15th March, 1848 ; the effect of which was to lay open the land between Back Street and Charles Street to the public travel, so that persons passing down Back Street from the north might turn off and follow the line of the railroad, until they came to Charles Street, and from thence, passing into Smith Street, and crossing a bridge over the railroad to the south-east of its intersection with Back Street, might again enter Back Street.

*Cozzens*, for the plaintiff, upon the question of the dedication of Back Street for a public highway, cited *Hunter* v. *The Trustees of Sandy Hill*, (6 Hill, 412.) *Woodyer* v. *Hadden*, (5 Taunt. 125.) *The City of Cincinnati* v. *White*, (6 Peters, 435.) *Wright* v. *Tukey*, (3 Cush. 290; II Greenleaf's Ev. § 666 ; 2 Smith's Lead. Cases, 136,) and contended that even if Back Street were a public highway, the plaintiff was entitled, for the special damage which he had sustained, it being even out of the power of the legislature to destroy a highway without compensation ; *New Orleans* v. *The United States*, (10 Peters, 120 ; 2 Smith's Leading Cases· 141,) and the city authorities having no power under the 11th section of the charter to authorize the diversion of a street for the more convenient passage of the railroad; and the corporation being bound strictly to pursue their charter. *Spencer* v. *London and Birmingham Railway Co.* (1 Railway Cases, 150 ; Walford on Railways, pp.

71. 74. 109. 132. 123 ; 3 Hill. R. 567, 5 Hill. 170; 2 Green R. 172 ; 2 Railway Cases, 312. 330.)

*Ames* and *Carpenter*, for the defendant, admitting that, if the Court were of the opinion that Back Street was the plaintiff's private way, he was entitled to recover, contended that the facts proved a dedication, and, if this were the case, that the plaintiff must show not only that he had suffered a private damage, but also that the public had sustained an injury, his remedy being only for the special damage which he had suffered in consequence of a general damage to the public, and that if he could not show that the public had been wronged, the loss which he had sustained was merely *damnum absque injuria.* The public had not been injured, because the widening or diversion of Back Street made it more safe and conve-nient than it would have been if the railroad had passed under or over it, such a mode of passing at this place being, from the direction of the road, almost incompatible with the safety of the public travel; and although the charter provided two modes of passing, by raising or low-ering the highway, where the highway could not be crossed at grade, yet it could not have intended that the company should be restricted to these two modes, as was apparent from the use of the more general terms, "altera-tion" and "amendment," in a subsequent clause of the same section. The 11th section having invested the town councils with power to superintend the crossing of highways, and to institute proceedings, in case such crossing was unsatisfactory to them, and the corporation refused or neglected to comply with the required altera-tion, the remedy thus prescribed was the exclusive rem-edy, and so long as the crossing was done to the satisfac-

Hughes v. The Providence and Worcester Railroad Company.

tion of the town council, it could not be said to be a public nuisance, unless some gross error or fraud were shown in the decision of the council. To give any other construction to the section would be to promote multiplicity of suits, and thus encourage the very evil, which was designed to be avoided.

GREENE, C. J. delivered the opinion of the Court.

The declaration alleges, that the plaintiff is seized and possessed of a lot of land and a dwelling-house thereon adjoining to a public highway, in the City of Providence, called Back Street; that the defendants have so constructed their railroad as entirely to stop up and destroy said highway, and render the same impassable; and alleges special damages to the plaintiff, as owner of the house and lot. There is also a count, alleging that Back Street is a private way of the plaintiff, and claiming damages for having destroyed it. This count is under the eleventh section of the charter, which prohibits the Railroad Company from obstructing private ways, and gives the party injured an action on the case for damages.

The first question to be decided is, whether Back Street is a public or private way, or neither. If it is a private way, the defendants agree judgment shall be entered on the verdict.

At common law a highway may be made by dedication and an acceptance. The common law in relation to highways by dedication and use, and the public and private remedies for an obstruction thereof, prevails in Rhode Island. The act of January, 1844, is in affirmance of the common law.

To make a highway by dedication, there must be the assent of the owners of the land to its appropriation for a

66

public highway, and its use by the public for such purpose, and for such a length of time, that the public accommodation and private rights might be materially affected by an interruption of the enjoyment. *The City of Cincinnati* v. *White* (6 Peters, 431.)

For an obstruction to such a highway, the public are entitled to remedy by indictment, as for a public nuisance ; and private individuals, who sustain special damage, to their private action.

A dedication may be proved, not only by the declarations and unequivocal acts of the owner of the land, but it may be inferred from the public use, brought home to the knowledge of the owner. The assent of the owner is inferred from his silence and acquiescence under such public use.

The facts proved in relation to Back Street are as follows : It has been open, and called Back Street, and travelled in its whole length, as a public street, for nearly fifty years. It is true that, at its junction with Smith Street, it was in bad condition, so that the travel from the north, before reaching this end of the street, generally turned off over the town's land into Charles Street. But this deviation from Back Street was not because the public did not consider they had a right to pass over it at this place, but because the deviation shortened the distance, and the road was also better. When Canal Street was built, Back Street was improved by the digging down of the hill, and the travel was increased thereby. The evidence does not show, with any precision, when Canal Street was built, but somewhere between 1819 and 1833. But Back Street has never been repaired by the city surveyor, or, in any other way, accepted by the city authorities.

The land occupied by Back Street originally belonged to the town of Providence. The plaintiff claims title to his lot under a deed from the City Treasurer to John K. Smith and others, dated March 14, 1833. This deed bounds the lot on Back Street, and so do all the other deeds under which the plaintiff claims. It was also proved that the name, " Back Street," was put on a build-ing adjoining this street by the direction of the City authorities. These acts of the City, the street being then open, travelled, known and called Back Street, are a dedi-cation of the land for Back Street.

These facts show a dedication by the City, the then owner of the land, preceded and followed by a long con-tinued public use ; so long continued as of itself to fur-nish just ground for an implied dedication.

Considering Back Street a public street, the next ques-tion is, how have the defendants dealt with it, and are they justified in what they have done?

The level of the Railroad was eight feet below the level of the street, at the point where the road intersects the street. The defendants dug the street down to the level of the road so as to give the road a passage through, without changing the level of the grade, and, instead of building a bridge so as to connect the severed parts of the street together and render the same safe and conve-nient to pass, have left the two parts severed from each other, and the street at this point entirely impassable.

They have sought to remedy this difficulty in the fol-lowing manner :

The City of Providence owned the land, bounding on the east side of Back Street, for the length of the street occupied by the railroad in passing through it, and ex-tending down to Charles Street on the east. On the

15th of March, 1848, the Board of Aldermen passed the following resolution, to wit:

" Whereas the City Council did authorize an adjustment of the the claim for damages, caused by the construction of the Providence & Worcester Railroad across the city property between Charles and Back Streets, upon certain conditions, among which was one, *that Back Street should be connected with Charles Street through the City property*, and whereas the City Council have authorized the Board of Aldermen to connect said streets, and to appropriate such part of the City estate, as public convenience may require, therefor; *Resolved*, that the plat, this day presented to the Board, be, and the same is hereby directed to be recorded, and that the north-easterly line of Back Street be as follows; beginning on the west side of Charles Street at a point 116½ feet from the corner of the Canal Bleaching Company's land, thence at right angles with Charles Street 42 feet, thence on a course 29½ feet, radius 30 feet, thence a straight line parallel with the Railroad, and 40 feet therefrom, until it intersects Back Street; and that all the land included in the triangular space between the Railroad and Charles Street and the line before described, be, and the same is included in Back Street, provided that it shall be lawful for the City to enclose, for ornamental purposes, any part of said triangular space not required for travel." The effect of this ordinance is to widen Back Street on the east side thereof, making the addition bound on the east line of the Railroad, and running to Charles Street on the east, and to Smith Street on the south, connecting the severed parts of Back Street, and furnishing more land for Back Street than is taken away by the Railroad. And

the street, thus widened, is said to be more convenient for the public travel than the original street.

This is called widening Back Street, but the effect and substance of the proceeding is to furnish a new street at this point, in place of the old one, occupied by the Railroad, the new street connecting the severed parts of Back Street, and forming one street.

Is this authorized by the charter? The general provision in relation to this subject is found in the eleventh section, which declares, "if a railroad shall pass a highway, it shall be so constructed as not to impede or obstruct the safe and convenient use of such highway." The corporation are not to destroy a part of the old highway, and to supply its place by appropriating new land to the same purpose, or, in other words, by widening the highway to the same or a greater extent than the part occupied by the railroad, even though such change might be for the public convenience. This clause is intended to secure the existing highway unobstructed for the public use.

The section goes on to give the corporation power to raise or lower such highway, so that the railroad, if necessary, may conveniently pass under or over or across the same. In conferring this power, the legislature did not intend to modify or repeal the general provision, to which I have adverted, but to provide a mode by which the general provision could be carried out, and the railroad enabled to pass a highway without interfering with the public use of it. If they excavate the highway, as was done in the present case, they must make it safe and convenient to pass by a bridge. If, on the other hand, the railroad passes above the highway, a bridge must be

constructed for such passage. It is said the term, "bridge," is not mentioned in the section, but the implication is so strong, the meaning would not have been more clear, if the term had been used.

It is by this implication, the corporation get their power to build a railroad bridge over a highway.

The section then provides, that, if the corporation shall not so lower or raise the highway as to be satisfactory to the town council, that body may require, of the corporation, such alteration or amendment as they shall deem necessary. And if the corporation refuse or neglect to comply with the requisition, the town council may file their complaint with the Court of Common Pleas, who are authorized to decree that the corporation shall comply with the requisition.

We do not think this last clause was intended to enlarge the powers of the corporation, before granted, but to guard against any abuse of them. The town councils are made the supervisors of the proceedings of the corporation, in order to secure the public in the convenient and unobstructed use of the existing highways.

The two cases in which the town council are authorized to act, are where the highway is so raised or so lowered as not to be satisfactory to them ; and the alteration or amendment, which the town council have power to require, are such and such only as in their judgment will more perfectly render the existing highway safe and convenient for the public use.

Undoubtedly, the town council have power, under the existing law, to lay out a new highway by the side of the old one, or to widen the old one. Such a proceeding may be legal, but it can form no justification to the corporation for the destruction of the old one. Nor will such a

justification derive any validity from the fact, that the addition to the old highway renders it more convenient to the public than it was before. It is not a question of convenience, but of power. All the public have an interest in a public highway, and the verdict in this case finds the plaintiff has sustained special damage to the amount of thirty-six dollars per year, by the interruption of this highway. This verdict shows the importance of these provisions of the charter, which are intended to secure existing highways for the public use.

The powers of railroad and other corporations affecting private and public rights must be strictly pursued, at least in these particulars ; they can do only what their charter authorizes them to do and in the way and manner therein prescribed.

That the construction, we have given to the eleventh section is the true one, we think is apparent, not only from the general scope and provisions of the section, but from that part of the section which is relied upon to justify an opposite construction.

The term alteration it is contended is broad enough to cover the present case and to render the proceedings of the Board of Aldermen a justification for the corporation.

It is to be recollected, the corporation are first to be required to make the alteration ; this presupposes it to be such as the corporation have power to make and may lawfully make. Now, the corporation have no power to lay out highways or to surrender them. If they own the land they may dedicate it as a private individual may, but not otherwise. Their power in this respect, is the same in nature and effect as the power of a private individual.

The town council cannot confer upon the corporation any of their jurisdiction over highways ; their power is to require the corporation to make the alteration, not to authorize them to do it. If they neglect or refuse, the town counsel may do what ? make it themselves ? No. They must apply to the Court of Common Pleas for a confirmation of their requisition, and, if the Court confirm it, and the corporation neglect to comply with it, the town council may then go on and make the alteration themselves at the expense of the corporation. But it must be the same alteration they had required the corporation to make.

Again, what are the powers of the town councils ? If they attempt to lay out a new highway, they must do it in conformity to the existing law, as they would lay out any other highway ; in such case the land owner has an appeal to the Court of Common Pleas from the order of the town council, laying out the way. On such appeal, the jury may reverse the order of the town council.

We think it quite apparent, that the alteration and amendment contemplated by the charter are such, as will more perfectly secure the public in the safe and convenient use of the existing highways, and not such, as have been made in the present case.

It is said it would be difficult, perhaps impracticable, to bridge Back Street at the place where the railroad crosses it, in consequence of the oblique manner in which the road passes the street, and the noise of the cars passing under the bridge might frighten horses passing over it and thus render the travel unsafe. But suppose this to be so, of which there is no proof before the Court, neither the Board of Aldermen or this Court have any power to alter the charter, so as to conform to such a state of facts.

The corporation, having accepted their charter, cannot now be permitted to say it is impracticable for them to comply with it, or that a compliance would be dangerous or inconvenient to the public.

We are of the opinion, therefore, that the proceedings of the Board of Aldermen widening Back Street, are no justification for the corporation in excavating Back Street and making it impassable.

The excavation itself was not a wrong; it becomes such by the subsequent neglect of the corporation.

But these proceedings contain no such approval. It appears, in the adjustment of the claim of the city against the corporation for damages, caused by the construction of the railroad across the city property between Charles and Back Streets, one of the conditions agreed upon was, that Back Street should be connected with Charles Street through the city property, and this condition is performed in connecting the two streets in the manner agreed upon.

In this, the excavation of Back street or the neglect to build a bridge, or the addition to Back Street being made as a substitute for a bridge, is not only not approved but not mentioned.

The appropriation of the land between the two streets to Back Street, was by virtue of an adjustment of pecuniary claims between the parties, the city agreeing to appropriate so much of their land for a street, just as an individual would make a similar agreement, and the ordinance of the Board of Aldermen merely executes this agreement. They no doubt knew that the railroad had rendered Back Street impassable at this place, that no bridge had been built, and that this addition to Back Street would be convenient to the public, but they do not ad-

67

judge this addition to Back Street to be satisfactory. They act not as a public tribunal, but as a private party executing a contract. But it is not necessary to consider these proceedings, for we are of the opinion, that whatever construction may be put upon them, the corporation cannot justify under them.

The plaintiff having procured surveys to be made and a plat to be drawn of the premises, in relation to which this suit was brought, to be used as evidence in the case, claimed, that he was entitled to recover the charges thereby incurred, as a part of his costs; but the Court held, that where a plat is taken *ex parte* by one of the parties to a suit, he can only recover for the surveyor the ordinary fees as a witness, but not for his services in making the surveys and plat.